UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

    Plaintiff,

v.                                                          CASE NO.:  6:08-cv-805-Orl-28-CJK

PARAMOUNT LAKE EOLA, L.P.; and
HARDIN CONSTRUCTION COMPANY, LLC

    Defendants.
_____
PARAMOUNT LAKE EOLA, L.P.; and
HARDIN CONSTRUCTION COMPANY, LLC

    Plaintiffs,
v.                                                          CASE NO.: 6:08-cv-1164-Orl-28GJK

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

    Defendant.
_____

**PARAMOUNT'S FIRST AMENDED MOTION TO STRIKE NOTICE AND CLAIM OF CHARGING LIEN & MEMORANDUM OF LAW**

**COMES NOW**, the Defendant/Plaintiff, Paramount Lake Eola, L.P. ("PARAMOUNT"), by and through its undersigned counsel, and hereby moves this Honorable Court for an Order striking[1] the Notice and Claim of Charging Lien [Doc. 103] ("LIEN"), and in support thereof states as follows:

    1.    On March 5, 2010, the LIEN was filed in the instant case by Miss Raegan S. Yunger ("ASSOCIATE").  [Doc. 103].

---

[1] The undersigned and its client have no objection to this Court treating this Motion to Strike as a Motion for Summary Judgment or any other appropriate vessel the Court feels is necessary to dispose of this matter.

1

2. The present action is a claim and counterclaim for declaratory relief arising out of an insurance policy issued by Travelers Property Casualty Company of America to PARAMOUNT.

3. The undersigned of the law firm of Boyle & Gentile, P.A (f/k/a Fink, Boyle & Gentile, P.A.) (the "FIRM") entered into an original employment contract with PARAMOUNT on October 7, 2008, as it pertains to legal representation of PARAMOUNT in the instant action ("Paramount Contract").[2]  A copy of the Paramount Contract is attached hereto as Exhibit "A".

4. The Paramount Contract was executed by the undersigned, Mark A. Boyle, Sr., Esquire, a partner with the FIRM, and by PARAMOUNT's Senior Vice President, Mr. Greg West.  No other persons executed the Paramount Contract.  A copy of the Affidavit of Mark A. Boyle, Sr., Esquire is attached as Exhibit "B", a copy of the Affidavit of Greg West is attached as Exhibit "C" and a copy of the Affidavit of Geoffrey H. Gentile, Sr., Esquire is attached as Exhibit "D".

5. On or about July 21, 2009, mediation was held between the parties in the instant case and a Tentative Resolution was reached ("Tentative Resolution").  [Doc. 88].

6. Despite a Tentative Resolution having been reached, as this Court is well aware, the instant case has been granted abatement periods because extra time has been required for PARAMOUNT to negotiate with its lenders on the distribution of the proceeds resulting from the Tentative Resolution.  [Docs. 90, 94, 96, 98, 102].  Most recently, this Court extended the abatement period to March 15, 2010.  [Doc. 102].

---

[2] The original Employment Contract was amended with the written consent of the client to reflect a referral fee being paid to Stephen W. Pickert, Esquire, of the law firm of Moye, O'Brien, O'Rourke, Pickert & Dillon, LLP, who referred the case to the undersigned.

7. ASSOCIATE was employed by the FIRM from June 2, 2008 through December 22, 2009, as an associate attorney. See Exhibits "B" and "D". No written employment agreement exits between ASSOCIATE and FIRM. See Id. ASSOCIATE was an "at-will" employee of the FIRM who was compensated as a salaried employee. See Id. No written or oral or implied or express agreement exits between ASSOCIATE and FIRM which provides compensation beyond the salary. See Id. ASSOCIATE's immediate supervisors included the undersigned as well as the FIRM's other partner, Geoffrey H. Gentile, Sr., Esquire. See Id.

8. While employed with the FIRM, the undersigned, as the lead and primary attorney in the FIRM with respect to all the PARAMOUNT files/cases, tasked ASSOCIATE with assignments in relation to the FIRM's handling of the instant case and its client, PARAMOUNT. See Exhibit "B".

9. ASSOCIATE's employment with the FIRM ended on December 22, 2009, prior to the parties having finalized closing documents, prior to the parties having actually executed closing documents, prior to the actual tender of any proceeds, and prior to the conclusion of PARAMOUNT's negotiations with its lenders, which remain ongoing. See Exhibits "B" and "D".

10. At no time did any oral or written agreement, express or implied, exist between ASSOCIATE and the FIRM's client, PARAMOUNT for payment of attorneys' fees to ASSOCIATE, either dependent upon or out of recovery in this case. See Exhibit "C". Although it is irrelevant to the disposition of this motion, at no time did any oral or written agreement, express or implied, exist between ASSOCIATE and the FIRM for payment of attorneys' fees to ASSOCIATE, or any portion thereof, either dependent

upon or out of recovery, relative to PARAMOUNT's claims in the instant action. See Exhibits "B" and "D".

11. At no time has there been an avoidance of payment of attorneys' fees to the FIRM by its client, PARAMOUNT. See Id.

12. At no time has there been a dispute as to the amount of fees to be paid by the FIRM's client, PARAMOUNT, to the FIRM. See Id.

13. Because ASSOCIATE never had a contractual relationship with PARAMOUNT, this Court is without jurisdiction to handle the claim of charging lien.

14. Because ASSOCIATE did not have a contractual relationship with the client, her charging lien fails as a matter of substantive Florida law.

WHEREFORE, Defendant/Plaintiff, Paramount Lake Eola, L.P., by and through its undersigned counsel, hereby moves this Honorable Court for an Order striking[3] the Notice and Claim of Charging Lien [Doc. 103], and any other relief this Court deems just and proper.

## MEMORANDUM OF LAW

## FACTS

The instant action involves a claim and counterclaim for declaratory relief arising out of an insurance policy issued by Travelers Property Casualty Company of America and PARAMOUNT. [Docs. 1, 1-1, 45, 45-1].

The undersigned partner in the FIRM entered into an employment contract with PARAMOUNT on October 7, 2008 ("Paramount Contract"). See Exhibit "A". The Paramount Contract was executed by the undersigned, Mark A. Boyle, Sr., Esquire, a

---

[3] While this instant Motion is framed as Motion to Strike, PARAMOUNT has no objection to this Court treating this Motion as requesting, in the alterative, dismissal with prejudice of and/or summary judgment as to the LIEN, or as any other motion which would allow this Court to resolve the LIEN summarily.

partner with the FIRM, and PARAMOUNT's Senior Vice President, Mr. Greg West. No other persons executed the Paramount Contract. See Exhibits "A", "B" and "C" and "D". PARAMOUNT was referred to Mark A. Boyle, Sr. and the firm of Boyle & Gentile, P.A. through attorney Stephen W. Pickert, Esquire. ASSOCIATE had no involvement whatever in obtaining the client on behalf of the FIRM. See Exhibit "B".

Despite having reached a Tentative Resolution, the instant case has been granted abatement periods because extra time has been required for PARAMOUNT to negotiate with its lenders. [Docs. 90, 94, 96, 98, 102]. The current abatement period ends March 15, 2010. [Doc. 102].

ASSOCIATE was employed by the FIRM from June 2, 2008 through December 22, 2009, as an associate attorney. See Exhibits "B" and "D". Her immediate supervisors included the undersigned as well as the FIRM's other partner, Geoffrey H. Gentile, Sr., Esquire. See Id. While employed with the FIRM, the undersigned tasked ASSOCIATE with assignments related to the FIRM's representation of its client, PARAMOUNT. See Id. As of December 22, 2009, the parties had not yet finalized closing documents, and PARAMOUNT had not concluded its ongoing negotiations with its lenders (which remain ongoing as of the date of this Motion). See Id.

At no time did any oral or written fee agreement, contingency or otherwise, express or implied, exist between ASSOCIATE and the FIRM's client, PARAMOUNT. See Exhibits "A", "B", "C" and "D". At no time did any oral or written agreement, express or implied, exist between ASSOCIATE and the FIRM's client, PARAMOUNT, for payment of attorneys' fees to ASSOCIATE, either dependent upon or out of recovery. See Id. At no time did any oral or written agreement, express or implied, exist between ASSOCIATE and the FIRM for payment of attorneys' fees to ASSOCIATE, or any

5

portion thereof, either dependent upon or out of recovery. See Exhibits "B" and "D". At no time has there been an avoidance of payment of attorneys' fees to the FIRM by its client, PARAMOUNT. See Id. At no time has there been a dispute as to the amount of fees to be paid by the FIRM's client, PARAMOUNT, to the FIRM. See Id.

## SUMMARY OF ARGUMENT

The undisputed facts as referenced in ASSOCIATE's LIEN do **not** support the application of this Court's limited ancillary jurisdiction to address attorney fee disputes. Assuming, arguendo, this Court were inclined to exercise jurisdiction over the charging lien issue, undisputed facts show that the Claim of Lien in question fails to meet the key essential element of a lien, that is, a contract between ASSOCIATE and PARAMOUNT. ASSOCIATE is attempting to convert a dispute between ASSOCIATE and the FIRM which previously hired her into one between ASSOCIATE and the client. The law simply does not authorize a charging lien in such circumstances, and accordingly, ASSOCIATE's LIEN should be stricken.

## LEGAL AUTHORITY

### This Honorable Court Should Not Exercise Jurisdiction Over This Matter

The fact that ASSOCIATE claims a right to attorneys' fees and costs pursuant to Florida Statutes §448.08 is instructive as that statute authorizes any fees and costs for unpaid wages between an employer and employee. PARAMOUNT was not ASSOCIATE's employer.

The federal courts are courts of limited jurisdiction. Hogben v. Wyndham International, Inc., 2007 U.S. Dist. Lexis 55792 (S. D. Fla. 2007). Their power is authorized by the Constitution and statute. Id. citing generally, Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies

outside this limited jurisdiction, and the **burden of establishing the contrary rests upon the party asserting jurisdiction**." Id. citing Kokkonen, 511 U.S. 375 (internal citations omitted, emphasis added).  Disputes as to attorneys' fee agreements between clients and their counsel give rise to no claims arising under federal law.  Id.  When there is no diversity among those involved in such an attorneys' fee agreement dispute, then such dispute "would normally be beyond the limited jurisdiction that this federal court would have.  State courts, which do have general jurisdiction, would be the appropriate fora to litigate those disputes."  Id.  One narrow exception exists; the doctrine of ancillary jurisdiction as codified in part through federal statute, 28 U.S.C. § 1367.  Id.  It "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them."  Id.

The doctrine of ancillary jurisdiction has been applied in resolution of disputes between a party to a federal lawsuit **and that party's attorneys** over the proper amount of fees due the attorneys for work performed in the lawsuit.  Id. citing e.g., Gottlieb v. GC Financial Corp., 97 F. Supp. 2d 1310 (S.D. Fla. 1999) and Zaklama v. Mount Sinai Medical Center, 906 F.2d 645 (11th Cir. 1990) (both adjudicating post-judgment attorneys' fees disputes under Florida law charging liens)(other citations omitted).

Under a four-factor test for determining whether to exercise ancillary jurisdiction, the following factors must be considered: "(1) an ancillary matter should arise from the transaction that was the basis of the principal proceeding, during the course of the principal proceedings, or as an integral part of the main proceeding; (2) the federal court should be able to determine the matter without a substantial new factfinding proceeding;

(3) failing to determine the matter should not deprive a party of any important procedural or substantive right; and (4) the matter should be decided if necessary to protect the integrity of the principal proceeding or insure that its disposition is not frustrated." Hogben, 2007 U.S. Dist. Lexis 55792 citing Jenkins v. Weinshienk, 670 F.2d 915, 918 (10th Cir.1982).

Because federal courts are courts of limited jurisdiction, courts in the Eleventh Circuit have developed specific rules for addressing whether charging lien claims should be handled in federal court. ASSOCIATE's claimed LIEN cannot meet any of the elements necessary to support an exercise of this Court's jurisdiction. Reduced to its essence, ASSOCIATE's LIEN is a claim for breach of contract with her employer, the FIRM, which should be resolved through state court channels.

## Discussion & Analysis of This Court's Jurisdiction

First, it is clear from the Affidavits attached hereto that no dispute exists between PARAMOUNT and the FIRM. See Exhibits "B", "C" and "D". PARAMOUNT, as the FIRM's client, does not dispute its agreement to pay the FIRM attorneys' fees pursuant to the Paramount Contract as executed by PARAMOUNT and the FIRM. See Id. There has been no avoidance of payment of attorneys' fees to the FIRM by its client, PARAMOUNT. See Id. ASSOCIATE's claims in the LIEN are alleged to arise from an "internal compensation agreement" between the FIRM and ASSOCIATE. [Doc. 103]. **Even assuming such an "internal compensation agreement" does exist, the LIEN claim asserted by ASSOCIATE in the instant litigation, thus, does not arise from any matter or issue before this Honorable Court in this case.** Therefore, the LIEN cannot be said to arise from any "transaction that was the basis of the principal

8

proceeding, during the course of the principal proceedings, or as an integral part of the main proceeding", and, as such, this Court should not exercise ancillary jurisdiction. Hogben, 2007 U.S. Dist. Lexis 55792 citing Jenkins, 670 F.2d at 918.

Second, because ASSOCIATE's claims in the LIEN are alleged to arise from an "internal compensation agreement" between the FIRM and ASSOCIATE, the Court would have to analyze the merits of the "internal compensation agreement" in order to fully determine the substance of the LIEN. Thus, since this Court would not be able to determine the matter without "a substantial new fact finding proceeding" as to any "internal compensation agreement", this Court should not exercise ancillary jurisdiction. Id. Crucially, any such "fact finding" would have nothing whatever to do with PARAMOUNT, and thus a lien against PARAMOUNT is particularly inappropriate.

The fact that this dispute is **really** one between ASSOCIATE and FIRM as opposed to ASSOCIATE and PARAMOUNT is highlighted by ASSOCIATES's claim of statutory fees pursuant to Florida Statutes §448.08. Section 448.08, Florida Statutes (2009) only authorizes fees where an "employee" prevails in an action to recover "unpaid wages" against an employer. See Caldwell-Davis Construction Corp. v. Hoover, 461 So. 2d 973 (Fla. 3d DCA 1984). Independent contractors are not entitled to a fee award under the statute because they are not employees and their claims are not wages. See R.J. Katz & Co. v. B.T.I. Freight Systems, Inc., 632 So. 2d 244 (Fla. 3d DCA 1994) (real estate broker who obtained lease, earned commission not entitled to attorneys' fees); Singer Products, Inc. v. Tecnecol, Ltda., 625 So. 2d 892 (Fla. 3d DCA 1993) (independent corporate agent not an employee and not entitled to attorneys' fees under statute); and Miller v. Perez, 524 So. 2d 1084 (Fla. 4th DCA 1988) (real estate

agent who earned commission not entitled to fees under statute).  In the present matter, ASSOCIATE plainly is not an employee of PARAMOUNT, and therefore is not entitled to attorneys' fees associated with seeking a charging lien.

Third, refraining from determining the merits of the LIEN **will not** "deprive a party of any important procedural or substantive right" because the existence and terms of any alleged "internal compensation agreement" between the FIRM and ASSOCIATE can be litigated outside of this case by suits filed in state court relative to any alleged breach of contract or other claims arising from the "internal compensation agreement". Id.  As such, there is no need for this Court to exercise ancillary jurisdiction.

Lastly, any determination by this Court as to the merits of the LIEN is not "necessary to protect the integrity of the principal proceeding or insure that its disposition is not frustrated". Id.  As has already been described to this Honorable Court, a Tentative Resolution has been reached by the parties.  [Doc. 88].  Thus, the "principal proceeding", for the most part, has been resolved, and this Court's ruling on the LIEN is not necessary to protect the Tentative Resolution.  However, negotiations are ongoing between PARAMOUNT and its lenders.  See Exhibits "B", "C" and "D".  In order to ensure that these negotiations are not frustrated, and that the overall Tentative Resolution between the parties is also not frustrated, this Court should not exercise ancillary jurisdiction.

After applying the four part test of the necessary elements for determining whether to exercise ancillary jurisdiction, ASSOCIATE's LIEN fails each factor. Therefore, this Court should refrain from exercising ancillary jurisdiction and

strike/dismiss the LIEN. However, not only does the LIEN not meet the requirements for the Court's jurisdiction, it also fails to meet the requirements under Florida law.

### Florida Law Governs Charging Liens

Assuming jurisdiction exists, federal courts apply state law when determining whether an attorney has a valid charging lien. Gottlieb, 97 F. Supp. 2d 1310 ("Federal courts, although they recognize no common-law lien in favor of attorneys, give effect to the laws of the states in which they are held."); see Zaklama, 906 F.2d at 652 ("The rights and obligations of parties to a contract, which provides attorney's fees upon the happening of a contingency, are governed by state law."). Under Florida common law, a charging lien is "an equitable right to have costs and fees due [to] an attorney for services in the suit secured to him in the judgment or recovery in that particular suit. It serves to protect the rights of the attorney." Clay County Port, Inc. v. M/V Endeavor, 2009 U.S. Dist. Lexis 87106 (M.D. Fla. 2009) citing Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, PA. v. Baucom, 428 So. 2d 1383, 1384 (Fla. 1983); see also, Montpellier Farm, Ltd. v. Crane Environmental, Inc., 2009 U.S. Dist. Lexis 61786 (S. D. Fla. 2009).

### Elements Required for a Valid Charging Lien

In order for an attorney's charging lien to be imposed, Florida law requires: "(1) a contract between the attorney and client; (2) an express or implied understanding that payment is either contingent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or a dispute as to the amount of the fee; and (4) a timely notice of a request for a lien." Daniel Mones, P.A. v. Smith, 486 So.2d 559, 561

(Fla. 1986); see also, Weed v. Washington (In re Washington), 242 F.3d 1320, 1323 (11th Cir. 2001).

**The attorney seeking the charging lien must show these four elements**. Gottlieb, 97 F. Supp. 2d at 1311 (emphasis added). "In effect, the interest created by a valid attorney's charging lien arises by operation of law **when all of the requirements of such a lien are satisfied** and is effective from the commencement of the attorney's services in advance of any judicial action recognizing it." In Re: Diagnostic Institute Of Florida, Inc. v. Universal Financial Solutions Llc, 2008 U.S. Dist. Lexis 62120 (Fla. S. D. 2008) citing In re Washington, 242 F.3d at 1323. Both Florida cases, and cases from federal courts interpreting Florida law, hold that the absence of any element of a charging lien, including the absence of a contract between the attorney and the client, must result in the summary determination of any claimed charging lien. Gottleib, 97 F. Supp 2d 1310.

**Discussion & Analysis of the Elements Required for a Valid Charging Lien**

ASSOCIATE's LIEN, on its face, is not valid.  First, as asserted in the LIEN by ASSOCIATE, "Boyle & Gentile, P.A. [the FIRM] has a contract for legal services with Paramount," not ASSOCIATE.  [Doc. 103].  Knowing that she does not have contractual relationship with PARAMOUNT, either implied or express, ASSOCIATE does not even attempt to allege the existence of such a contract, and in following, no such contract for legal services between ASSOCIATE and PARAMOUNT has been attached to the LIEN. ASSOCIATE even failed to attach the existing agreement, the Paramount Contract between the FIRM and PARAMOUNT.  [Doc. 103].

Second, no express or implied understanding that payment of legal fees of any type or amount would be made by PARAMOUNT at any time directly to ASSOCIATE exists. See Exhibits "B", "C" and "D". Again, no such allegation was made by ASSOCIATE in the LIEN. [Doc. 103].

Third, there has been no attempt by PARAMOUNT to avoid paying attorneys' fees to the FIRM pursuant to the Paramount Contract and likewise, there has been no dispute between PARAMOUNT and the FIRM as to the amount of attorneys' fees. See Exhibits "B" and "D". Seemingly, the only dispute that exists is the one created by ASSOCIATE over an alleged claim to a portion of the FIRM's attorneys' fees which, by ASSOCIATE's own assertions in the LIEN, arises from an alleged "internal compensation agreement" with the FIRM. While no such "internal compensation agreement" between ASSOCIATE and FIRM actually exits, any such claims by ASSOCIATE for breach or the like against the FIRM is not appropriately brought in a charging lien. It is not for this Court to make a determination as to the existence, terms or breach of any such agreement, as such would be beyond this Court's jurisdiction as discussed *supra*.

After applying the facts at hand to determine whether the LIEN is valid, it is clear that it is not valid, having failed to satisfy all of the requirements for a valid charging lien. See In re: Diagnostic Institute of Florida, Inc., 2008 U.S. Dist. Lexis 62120. The LIEN must be stricken with prejudice, or in the alternative, dismissed with prejudice or otherwise summarily disposed of by this Honorable Court.

Based upon the undersigned's conversations with counsel for ASSOCIATE, it is anticipated that ASSOCIATE will rely on the case of Barwick, Dillian & Lambert, P.A. v.

Ewing, 646 So. 2d 776 (Fla. 3d DCA 1994), in support of her LIEN. Barwick, to the extent that it has any applicability to this matter, is easily factually distinguishable. In Barwick, the client was attempting to avoid paying the firm and its originating associate attorney fees. Id. at 777. The client had been brought to the firm through the efforts of an associate, Cary L. Ewing ("Ewing"). In the instant case, ASSOCIATE did not have any role in bringing PARAMOUNT to the FIRM. Ewing executed the fee agreement with the client. Id. at 777, fn 2. In the instant case, ASSOCIATE did not execute the fee agreement. Prior to the filing of the charging lien, Ewing had left the firm, apparently reaching some agreement with the firm relative to his interest in the case pursuant to an "internal compensation agreement". Id. at 777.

Crucially, Barwick does not address the question of whether or not Ewing had an independent right to file a charging lien. This issue is not discussed in the opinion. Perhaps the court and parties assumed that the Ewing, as the originating and contracting attorney, was entitled to legal rights to pursue a charging lien. It is does not appear from the opinion that the client challenged the right to a claim of lien. Instead, client challenged the amount of any fee award and the propriety of splitting the fee between Ewing and the firm. In any event, it is clear from the opinion that the existence of a contractual relationship, the first and most necessary element of a charging lien, was not in dispute.

The true holding of Barwick is that an "internal compensation agreement" within a law firm is not violative of the Florida Bar's disciplinary rule then 2-107(a), presently Florida Bar Rule 4-1.5(f)(4)(D). Id. at 779. The only other holding of significance in the case was a recognition that the attorneys claiming the charging lien had failed to

present sufficient evidence, in the form of testimony regarding a quantum meruit fee, to support their attorney fee claim. Id. at 779. The case is not properly read as holding that every associate working for a law firm in Florida has the right to a charging lien **against the client**, by virtue of their employment with a law firm representing the client.

Even if it is assumed that the Barwick case has some legal applicability to the factual circumstances to the instant case, it is easily factually distinguishable. As noted previously, the associate asserting the charging lien in the Barwick case was both the originating lawyer and the lawyer who executed the fee agreement. Neither of these elements is present in the instant case.

Ethical considerations essentially demand, and public policy requires, that disputes between associates and their law firms not balloon or mushroom into claims affecting clients. If ASSOCIATE in the instant case wanted rights or protection relative to the client, it was incumbent on her to achieve the same contractually with the client. That, of course, did not happen in this case.

If the Court were to uphold the LIEN of the ASSOCATE under the facts of this case, a quite literal Pandora's Box of firm and associate employer issues would be opened. Literally all associates who perceived they were aggrieved by their former employer could claim a verbal, undocumented, unprecedented internal compensation mechanism and effectively intervene and thwart the client's interests. That neither is, nor should be, the law of Florida. Instead, this case should be sent where it belongs, to state court, where the parties can adjudicate the merits of an employment law claim. The undersigned has repeatedly advised ASSOCIATE and her counsel that she has such a right, if she believes she is aggrieved. ASSOCIATE should not be allowed to

interpose her personal employment law problem on the client.  This Court should resoundingly disapprove of her attempt to do so and strike or dismiss this LIEN.

## **CONCLUSION**

This Honorable Court should refrain from exercising ancillary jurisdiction over the LIEN because, after applying the four part test of the necessary elements for determining whether to exercise ancillary jurisdiction, the LIEN fails each factor. However, not only does the LIEN fail to meet the requirements for the Court's jurisdiction, the LIEN is invalid because it fails to satisfy all of the requirements under Florida law.  Therefore, the LIEN must be stricken with prejudice, or in the alternative, dismissed with prejudice or otherwise summarily disposed of by this Honorable Court.

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)**

I HEREBY CERTIFY that after conferring with counsel for TRAVELERS, Eugene P. Murphy, Esquire, he indicated that TRAVELERS takes no position with regard to the instant Motion to Strike; however, TRAVELERS does not oppose the filing of the instant Motion to Strike.  I have conferred with counsel for nonparty, Ronald W. Fraley, Esquire, who objects to the Motion to Strike.

By: /s/ Mark A. Boyle, Sr.
Mark A. Boyle, Sr.
FBN: 0005886

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 23, 2010, the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to EUGENE P. MURPHY, ESQUIRE, REBECCA LEVY-SACHS, ESQUIRE, and DEBORAH VENNOS, ESQUIRE, 1343 Main St., #400, Sarasota, FL 34236-5635, emurphy@rc.com, rlevy-sachs@rc.com, dvennos@rc.com, and RONALD W. FRALEY, ESQUIRE, 2525 Park City Way, Tampa, FL 33609, rfraley@fraleylawfirm.com.

        Boyle & Gentile, P.A.
        Attorneys for PARAMOUNT
        2050 McGregor Blvd.
        Fort Myers, FL 33901
        Telephone: (239) 337-1303
        Facsimile: (239) 337-7674

By: /s/ Mark A. Boyle, Sr.
        Mark A. Boyle, Sr.
        FBN: 0005886
        MBoyle@BoyleGentileLaw.com
        Debbie Sines Crockett
        FBN: 0033706
        Dcrockett@BoyleGentileLaw.com