# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

        **Plaintiff,**

-vs-                                **Case No. 6:08-cv-805-Orl-28GJK**

PARAMOUNT LAKE EOLA, L.P. and
HARDIN CONSTRUCTION COMPANY,
LCC,

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration following an evidentiary hearing on the following

motions:

| | |
|---|---|
| **MOTION:** | **PARAMOUNT'S FIRST AMENDED MOTION TO STRIKE NOTICE AND CLAIM OF CHARGING LIEN & MEMORANDUM OF LAW (Doc. No. 107)** |
| **FILED:** | **March 23, 2010** |
| | _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED**. | |

| | |
|---|---|
| **MOTION:** | **PARAMOUNT'S MOTION FOR SANCTIONS AND ATTORNEYS' FEES, REQUEST FOR ORAL ARGUMENT & MEMORANDUM OF LAW (Doc. No. 110)** |
| **FILED:** | **March 23, 2010** |
| | _____ |
| | **THEREON** it is **RECOMMENDED** that the motion be **DENIED**. |

| | |
|---|---|
| **MOTION:** | **CLAIMANT YUNGER'S MOTION TO PROHIBIT PARTIES FROM DISTRIBUTING ATTORNEYS' FEES PORTION OF SETTLEMENT FUNDS (Doc. No. 111)** |
| **FILED:** | **March 23, 2010** |
| | _____ |
| | **THEREON** it is **RECOMMENDED** that the motion be **DENIED**. |

On June 3, 2010, the Court held an evidentiary hearing on the following: 1) Notice and Claim of Charging Lien (the "Claim of Lien"); and 2) Paramount's First Amended Motion to Strike Notice and Claim of Charging Lien & Memorandum of Law ("Motion to Strike"); 3) Paramount's Motion for Sanctions and Attorneys' Fees, Request for Oral Argument & Memorandum of Law ("Motions for Sanctions"); and 4) Claimant Yunger's Motion to Prohibit Parties from Distributing Attorneys' Fees Portion of Settlement Funds ("Motion to Prohibit Distribution") (collectively, the "Motions"). Doc. Nos. 103, 107, 110, 111.[1]  For the reasons set forth below, it is recommended that the Motions be **DENIED**.

---

[1] The Motions were referred to the undersigned for a Report and Recommendation. *See* 28 U.S.C. § 636; Local Rule 6.01; Fed. R. Civ. P. 72.

## I.    BACKGROUND

On May 20, 2008, Plaintiff Travelers Property Casualty Company of America ("Travelers") filed a Complaint for declaratory relief against Defendant Paramount Lake Eola, L.P. ("Paramount") arising out of an insurance policy issued by Travelers to Paramount. Doc. No. 1. Paramount retained the law firm of Boyle & Gentile, P.A. ("B&G") for representation, and on October 7, 2008, Paramount and B&G entered into a mixed hourly and contingency fee arrangement, which provided for an hourly rate up to $100,000.00 in billings and, thereafter, additional compensation based on a contingent fee (herein, the "Paramount Contract"). *Id.*; Doc. No. 107-1.[2] On December 5, 2008, Paramount asserted a counterclaim against Travelers. Doc. No. 45.

On June 2, 2008, B&G hired Raegan Yunger ("Yunger") as an associate attorney. Doc. No. 103 at 2. Yunger maintains that when she was hired, she and B&G agreed that she would be paid a base salary of $85,000.00, receive a discretionary quarterly bonus and have an "opportunity" to participate in contingent fee recoveries. Doc. No. 103 at 2; Doc. No. 108. Yunger performed a substantial amount of work on the Paramount case and billed more hours to that case than any other B&G attorney. According to Yunger, at a firm lunch in December of 2008, Mark Boyle, Esq., ("Boyle"), a partner of B&G, offered to pay her a portion of the contingent fee realized in the Paramount case based on the percentage of hours Yunger billed, in relation to the total number of hours all B&G attorneys billed, in that case. Doc. No. 108 at 2.[3] Based on Yunger's contention, she would receive the majority of any contingent fee realized in

---

[2] Initially, the agreement between B&G and Paramount was based solely on an hourly rate fee arrangement.
[3] The parties dispute whether the luncheon occurred in December 2008 or January 2009, but the timing of the meeting is not material to this opinion.

the Paramount case. Paramount and B&G maintain that no such offer, agreement or understanding ever occurred. *See* Doc. No. 107.

On July 22, 2009, Travelers and Paramount achieved a tentative settlement ("Settlement"). Doc. No. 88; Doc. No. 107 at 2. On January 6, 2010, Yunger's employment was terminated by B&G.

### A.    Claim of Lien

On March 5, 2010, Yunger filed the Claim of Lien asserting that she is entitled to be paid a substantial portion of the contingent fee Paramount owes B&G. Doc. No. 103. Yunger maintains that this Court should exercise supplemental jurisdiction over her Claim of Lien. *Id.* at 4-5. She requests that the Court find she is entitled to a valid charging lien and award her the attorney's fees and costs she incurred in connection with this case pursuant to Section 448.08, Florida Statutes. *Id.*[4]

### B.    Motion to Strike

On March 23, 2010, Paramount filed the Motion to Strike the Claim of Lien. Doc. No. 107. Paramount and B&G maintain that no written or oral agreement exists between themselves and Yunger which would entitle Yunger to any additional compensation in relation to the Paramount case. *Id.* at 3. Paramount and B&G argue that because Yunger does not have a direct contractual relationship with Paramount, this Court does not have jurisdiction over the Claim of Lien and her claim fails as a matter of Florida law. *Id.* Accordingly, Paramount requests that the Claim of Lien be stricken from the record. *Id.*

---

[4] Fla. Stat. § 448.08 states: "The court may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee." Fla. Stat. § 448.08.

On March 26, 2010, Yunger filed a response in opposition to the Motion to Strike. Doc. No. 108. Yunger states that the Court should exercise supplemental jurisdiction over her Claim of Lien. *Id.* at 4-5. She maintains that the Claim of Lien is valid. *Id.* at 7-8.

C.      The Motion for Sanctions

On March 30, 2010, Paramount filed the Motion for Sanctions. Doc. No. 110. Paramount maintains that the Claim of Lien "is without legal basis, is frivolous, and is not supported by material facts necessary to establish a claim or defense . . . and/or is primarily taken for the purpose of harassment and unjustified interference." *Id.* at 3. Paramount states that Yunger was not an employee of Paramount and her claim against Paramount is "not for wages." *Id.* at 4. Accordingly, Paramount requests that this Court enter an order granting sanctions in the form of an award of attorneys' fees and costs to be paid jointly and severally by Yunger and her counsel, Ronald W. Fraley, Esq., and reserve jurisdiction to determine the amount of said sanctions and fees. *Id.*

On April 16, 2010, Yunger filed a memorandum in opposition to the Motion for Sanctions. Doc. No. 115. Yunger maintains that the Motion for Sanctions is premature and unsupported. *Id.* (citing *Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir. 1987). Yunger states that she is preserving her right for a claim for attorneys' fees under Section 448.08, Florida Statutes, in the event that she prevails on her Claim of Lien. *Id.* at 4.

D.      Motion to Prohibit Distribution

On March 20, 2010, Yunger filed the Motion to Prohibit Distribution. Doc. No. 111. Yunger requests that the Court enter an order prohibiting the parties, and their respective

counsel, from distributing or paying out the portion of the attorneys' fees based on the contingent

fee agreement between B&G and Paramount. *Id.*

On April 12, 2010, Paramount filed a response in opposition to the Motion to Prohibit

Distribution wherein Paramount requests that the Motion to Prohibit Distribution be denied. Doc.

No. 114. Paramount maintains that the Motion to Prohibit Distribution is procedurally deficient

and the relief sought is without legal basis. *Id.* at 7.

## II.     EVIDENTIARY HEARING

On June 3, 2010, the Court held an evidentiary hearing on the Claim of Lien and

Motions. Doc. No. 127.[5]   Yunger, Boyle, Geoffrey Gentile, Esq. ("Gentile"), a partner of B&G,

Debbie Crockett, Esq. ("Crockett"), an associate of B&G, and Nancy Hatt ("Hatt"), the office

manager of B&G, testified at the hearing.

Yunger testified that she and B&G agreed to the following compensation package:  1) a

base salary of $85,000.00; 2) a discretionary quarterly bonus to be determined by B&G; and 3)

the opportunity to receive a percentage of contingent fee recoveries.  Boyle confirmed that he

and Yunger orally agreed she would be paid an $85,000.00 base salary with quarterly bonuses.

However, Boyle disputed the third element of Yunger's purported compensation agreement --

that she had the opportunity to receive a percentage of contingent fee recoveries.  Boyle testified

that Yunger was to be paid quarterly bonuses in the discretion of the B&G firm based on a

variety of factors, including performance, firm economics and receipts. He stated the bonuses

were not based on a formula. Crockett also testified that the bonuses received by the attorneys

---

[5] On May 25, 2010, Robert C. Shearman, Esq., appeared on behalf of B&G. Doc. No. 119.

have never been based on any formula, such as the number of hours worked on a case.[6] No one

testified that at the beginning of the employment relationship there was any agreement or

understanding B&G would pay bonuses to Yunger after the date her employment terminated.

Central to the parties' dispute is the December 2008 lunch attended by Yunger, Boyle,

Gentile and Crockett. The accounts of what transpired at the lunch conflict.[7] Yunger testified

that during this lunch, Boyle expressed his decision to pay her a pro rata portion of the

contingent fee realized in the Paramount case based on the number of hours she billed in relation

to the total number of hours billed by all B&G's attorneys. Yunger said that she accepted

Boyle's offer.[8] Yunger testified that Crockett and Gentile adamantly objected to Boyle's offer

and were upset by the proposal because they thought it was unfair. Yunger stated that Crockett

argued it was unfair for an associate to receive such a high payout, and that Gentile agreed.

Yunger portrayed the December lunch as heated and tense, particularly with Crockett and

Gentile. Yunger testified that after hearing the objections raised by Crockett and Gentile, Boyle

nevertheless confirmed that he had decided to pay Yunger a pro rata portion of the contingent fee

in the Paramount case.

Boyle testified that during the December lunch, he did not offer Yunger a portion of the

contingent fee realized in the Paramount case. Rather, he testified that discussions during the

lunch generally involved firm economics and maintaining the financial health of B&G. Boyle,

Gentile and Crockett indicated that the lunch was not particularly memorable and they did not

---

[6] B&G's attorneys did acknowledge that on a few occasions the firm and its attorneys have reached specific internal agreements about how a contingent fee from a particular case would be divided.
[7] Accordingly, determining the credibility of the witnesses in terms of the accuracy of their recollections is critical to resolving the factual issues presented.
[8] At one point Yunger testified she accepted his offer by clearly stating that she accepted it. At another point she testified she accepted the offer by stating that she was now more motivated than ever to work on the Paramount case.

recall any heated acrimony or protest.[9]  Boyle, Gentile and Crockett denied any specific

agreement being reached at the luncheon regarding the distribution of the contingent fee in the

Paramount case.

On or about January 6, 2010, Yunger's employment relationship with B&G ended.

Yunger maintains that she was purposefully terminated just prior to B&G receiving a contingent

fee from the Paramount case.  Boyle testified that from September 2009 through Yunger's

termination, Yunger's work product was increasingly deficient and untimely, she began missing

work and not communicating with the other B&G attorneys.

## III.    LAW

### A.    Supplemental/Ancillary Jurisdiction

28 U.S.C. § 1367 provides:

> (a) Except as provided in subsections (b) and (c) or as expressly provided
> otherwise by Federal statute, in any civil action of which the district
> courts have original jurisdiction, the district courts shall have
> supplemental jurisdiction over all other claims <u>that are so related to
> claims in the action within such original jurisdiction that they form part
> of the same case or controversy under Article III of the United States
> Constitution</u>. Such supplemental jurisdiction shall include claims that
> involve the joinder or intervention of additional parties.
> . . .
> (c) The district courts may decline to exercise supplemental jurisdiction
> over a claim under subsection (a) if--
>
> > (1) the claim raises a novel or complex issue of State law,
> > (2) the claim substantially predominates over the claim or claims over
> > which the district court has original jurisdiction,
> > (3) the district court has dismissed all claims over which it has
> > original jurisdiction, or
> > (4) in exceptional circumstances, there are other compelling reasons
> > for declining jurisdiction.

---

[9] Gentile did not specifically recall what was discussed during the lunch meeting.

28 U.S.C. § 1367.[10]  "Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006).

"A bill filed to obtain any equitable relief in regard to, or connected with, or growing out of, any judgment or proceeding at law rendered in the same court . . . is an ancillary suit." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379 (1994).  "[N]o controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Hogben v. Wyndham Int'l, Inc.*, No. 05-20944-Civ, 2007 WL 2225970, at *4 (S.D. Fla. Aug. 1, 2007) (quoting *Kokkonen*, 511 U.S. at 377).  "Although a district court's exercise of ancillary jurisdiction is discretionary, the court must be cautious in its willingness to expand its jurisdiction." *Hogben*, 2007 WL 2225970, at *4.  "One such exception [to the general rule of federal court's limited jurisdiction is] the doctrine of ancillary jurisdiction-that has been codified in part through federal statute, 28 U.S.C. § 1367-[which] recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* (quoting *Kokkonen*, 511 U.S. at 377) (internal quotations omitted).  "One well recognized application of this narrow doctrine is the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due the attorneys for work performed in the lawsuit." *Hogben*, 2007 WL 2225970, at *4 (citing *Gottlieb v. GC Fin. Corp.*, 97 F. Supp. 2d 1310 (S.D. Fla. 1999); *Zaklama v. Mount Sinai Med. Center*,

---

[10] "28 U.S.C. § 1367 codifies the traditional concepts of ancillary and pendent jurisdiction under the name supplemental jurisdiction." *Baggett v. First National Bank of Gainesville*, 117 F.3d 1342, 1353 n.4 (11th Cir. 1997). "Simply explained, § 1367(a) grants the federal judiciary congressional approval to extend supplemental jurisdiction to the limits of the Constitution. Section 1367(b) and (c) reduce that grant." *Id.*

906 F.2d 650 (11th Cir. 1990)). "The charging lien is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit." *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So. 2d 1383, 1384 (Fla. 1983).

B.     Charging Liens Under Florida Law

"Federal courts, although they recognize no common-law lien in favor of attorneys, give effect to the laws of the states in which they are held." *Gottlieb*, 97 F. Supp. 2d at 1311 (quoting *Webster v. Sweat*, 65 F.2d 109, 110 (5th Cir. 1933)).[11] The parties agree that Florida law governs the Claim of Lien in this case. The Florida Supreme Court has set forth four requirements that the attorney must show to validly impose a charging lien: 1) an express or implied contract between attorney and client; 2) an express or implied understanding for payment of attorney's fees out of the recovery; 3) either an avoidance of payment or a dispute as to the amount of fees; and 4) timely notice. *Gottlieb*, 97 F. Supp. 2d at 1311 (quoting *Daniel Mones, P.A. v. Smith, Inc.*, 486 So. 2d 559, 561 (Fla. 1986)).

"The first element for a charging lien necessitates a contract between the attorney and the client." *Gottlieb*, 97 F. Supp. 2d at 1311; *see Sinclaire, Etc. & Zavertnik, P.A. v Baucom*, 428 So. 2d 1383, 1385 (Fla. 1983) ("In order for a charging lien to be imposed, there must first be a contract between the attorney and the client."). While this element may appear to require that the attorney asserting a lien have a direct personal contract with the client, the only Florida case directly addressing that point held otherwise. *See Barwick, Diilian & Lambert, P.A. v. Ewing*, 646 So. 2d 776 (Fla. 3d DCA 1995). In *Barwick*, the Barwick firm agreed to take a medical

---

[11] *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (decisions from the Fifth Circuit prior to October 1, 1981 are binding on the Eleventh Circuit).

malpractice case on a contingency basis. *Id.* Pursuant to an internal compensation agreement at Barwick, the attorney who brought a case to the firm would receive thirty percent (30%) of the contingent fee. *Id.* Carey Ewing, an attorney at Barwick, brought the case to the firm and was primarily responsible for the case. *Id.* at 777. For reasons unrelated to the case, Ewing was later dismissed from the Barwick firm. *Id.* Ultimately, the Barwick firm recovered $1,458,000.00 for the plaintiff, resulting in a contingency fee of $537,400.00. *Id.* at 778. Ewing filed a charging lien for her share of the fee. *Id.* The court upheld Ewing's lien, indicating: "At the time Ewing left the Barwick firm, she had performed all of the steps necessary to qualify for the thirty percent share." *Id.* at 779. The court held Ewing's right to a share of the contingent fee was protected by the fee agreement between the firm and the client:

> In this case the contingent fee agreement had been executed between the client and the Barwick firm. The agreement covered the entire firm. There was no requirement that each individual lawyer within the firm execute separate agreements with the client.

*Id.* Thus, although Ewing individually was not a party to the contract between the Barwick firm and the client, she was protected by the contract. *Id.*[12]

C.      Rule 11 Sanctions

An attorney who presents to the Court any paper, motion, or pleading certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that there is "evidentiary support" for any allegations or factual contentions. Fed. R. Civ. P. 11(b)(3). Rule 11 sanctions are proper:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a

---

[12] Ewing did sign the fee agreement on behalf of the Barwick firm.

reasonable argument to change existing law; and (3) when the party files
a pleading in bad faith for an improper purpose.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting *Jones v.*

*Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995). In deciding the propriety of Rule

11 sanctions, a court first determines whether the party's claims are objectively frivolous and

then, if so, whether the signatory to the pleading should have been aware that they were

frivolous— whether he would have been aware of the frivolousness if he had made a reasonable

inquiry. *Worldwide Primates*, 87 F.3d at 1254; *Jones*, 49 F.3d at 695.

    D. Section 57.105, Florida Statutes

Section 57.105, Florida Statutes, states:

> Upon the court's initiative or motion of any party, the court shall award a
> reasonable attorney's fee to be paid to the prevailing party in equal
> amounts by the losing party and the losing party's attorney on any claim
> or defense at any time during a civil proceeding or action in which the
> court finds that the losing party or the losing party's attorney knew or
> should have known that a claim or defense when initially presented to
> the court or at any time before trial:
>> (a) Was not supported by the material facts necessary to establish the
>> claim or defense; or
>> (b) Would not be supported by the application of then-existing law to
>> those material facts.
>
> However, the losing party's attorney is not personally responsible if he or
> she has acted in good faith, based on the representations of his or her
> client as to the existence of those material facts. If the court awards
> attorney's fees to a claimant pursuant to this subsection, the court shall
> also award prejudgment interest.

Fla. Stat. § 57.105. Thus, the court shall award attorney's fees to a prevailing party if the

opposing party asserts a claim or defense that is not supported by facts or law, unless that party

acted in good faith. *Id.*

12

"Attorney's fees pursuant to Florida Statute § 57.105 may be awarded to the prevailing party in a suit brought in federal court." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1478 n.11 (11th Cir. 1992) (citing *Capital Factors, Inc. v. Heller Fin., Inc.*, 712 F.Supp. 908, 914 (S.D. Fla. 1989)). In *BankAtlantic*, the Eleventh Circuit held:

> [T]he language of section 57.105 appears to be more stringent than that of [R]ule 11 in requiring "that there was a complete absence of a justiciable issue of law or fact raised by the complaint ... of the losing party." Accordingly, rejection of a rule 11 sanction clearly subsumes a denial of a statutory award of attorney's fees to the prevailing party.

*BankAtlantic*, 955 F.2d at 1478 n.11. Thus, sanctions are not warranted under Section 57.105 if the court finds they are not appropriate under Rule 11.

## IV.     ANALYSIS

### A.  Jurisdiction

According to the court in *Hogben*, one "well recognized" application of supplemental jurisdiction is the resolution of a dispute between a party and that party's attorney over the proper fees due the attorney for his or her work performed in the lawsuit. *Hogben*, 2007 WL 2225970, at *4. Federal courts give effect to the laws of the states in which they are held. *Gottlieb*, 97 F. Supp. 2d at 1311. Florida law recognizes an individual attorney's right to pursue a charging lien under a fee agreement between the law firm the attorney worked for and the client. *Barwick,* 646 So. 2d 776. Accordingly, it is recommended that the Court exercise supplemental jurisdiction over Yunger's Claim of Lien.

### B.  The Charging Lien

As mentioned above, the Florida Supreme Court established four requirements for a charging lien:  1) an express or implied contract between attorney and client; 2) an express or

implied understanding for payment of attorney's fees out of the recovery; 3) either an avoidance of payment or a dispute as to the amount of fees; and 4) timely notice. *Gottlieb*, 97 F. Supp. 2d at 1311.

With respect to the first requirement, there is no direct contract between Yunger and Paramount. The question before the Court is whether a contract between B&G and Paramount is sufficient for Yunger to assert a valid charging lien. In *Barwick*, the court held that the engagement agreement covered the entire firm as opposed to just those who executed the agreement. *Barwick*, 646 So. 2d 776. Accordingly, pursuant to *Barwick*, Yunger has satisfied the first required element of a valid charging lien.

The second requirement for a valid charging lien is that there is an express or implied understanding for payment of attorney's fees out of the recovery. Yunger is the only witness that testified at the hearing that B&G promised her a percentage of the contingent fee realized in the Paramount case. This offer purportedly occurred at the December lunch. However, everyone else present at the lunch testified that no such offer occurred.

Having observed the witnesses' testimony, the Court finds the recollections of Boyle, Crockett and Gentile to be consistent, corroborated and more persuasive in terms of what transpired at the December 2008 lunch. Therefore, it is recommended that the Court find Yunger has failed to establish an express or implied understanding that she would be paid out of the recovery realized in the Paramount case. Accordingly, it is recommended that the Court deny the Claim of Lien.[13]

---

[13] Because the Court recommends that Yunger's Claim of Lien fails on this ground, the Court will not address the remaining two elements of a valid charging lien. The Court is not determining the propriety of Yunger's termination or whether she is due any additional compensation from B&G. Such matters are beyond this Court's jurisdiction. The Court simply finds she failed to establish she is entitled to a charging lien in this case.

C.    Motion for Sanctions

With respect to the Motion for Sanctions, Yunger testified that there was an agreement between her and B&G that she be paid a pro rata portion of the contingent fee realized by B&G in the Paramount case.  Although the Court has found otherwise, it does not find that the assertion of her claim was objectively frivolous or made in bad faith. *Worldwide Primates*, 87 F.3d at 1254; *Jones*, 49 F.3d at 695; Fla. Stat. § 57.105.  Accordingly, it is recommended that the Motion for Sanctions be denied.

D.  Motion to Prohibit Distribution

In light of the Court's recommendations as to the Claim of Lien, it is further recommended that Yunger's Motion to Prohibit Distribution be denied.

V.    **CONCLUSION**

For the reasons set forth above, it is **RECOMMENDED** that:

1. Paramount's Motion to Strike (Doc. No. 107) be **DENIED**;

2. Paramount's Motion for Sanctions (Doc. No. 110) be **DENIED**; and

3. Yunger's Motion to Prohibit Distribution (Doc. No. 111) be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on June 21, 2010.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

15